**FILED**
**CLERK**

4/20/2016 1:27 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
MARGARET BITZ,

               Plaintiff,


       -against-


CAROLYN W. COLVIN,
Commissioner of Social Security,
               Defendant.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
14-CV-7453(ADS)

**APPEARANCES:**

**Stanton, Guzman & Miller, LLP**
*Attorneys for the Plaintiff*
820 Hempstead Turnpike 2nd Fl.
Franklin Square, NY 11530
      By: Stacey Rinaldi Guzman, Esq., Of Counsel

**The United States Attorneys' Office, E.D.N.Y.**
*Attorneys for the Defendant*
610 Federal Plaza
Central Islip, NY 11722
      By: Candace Scott Appleton, Assistant U.S. Attorney

**SPATT, District Judge**.

The Plaintiff Margaret Bitz (the "Plaintiff") commenced this action pursuant to 42 U.S.C.

§ 405(g) for review of the final decision of Carolyn W. Colvin, the Acting Commissioner of the

Social Security Administration (the "Commissioner"), finding that the Plaintiff is not entitled to

disability insurance benefits under Title II of the Social Security Act (the "Act"). Presently

before the Court are cross-motions by the parties for a judgment on the pleadings pursuant to

Federal Rule Civil Procedure ("Fed. R. Civ. P.") 12(c).

For the reasons set forth below, the Court grants the Commissioner's motion and denies

the Plaintiff's motion.

# I. BACKGROUND

## A. The Plaintiff's Background and Alleged Impairments

The Plaintiff is presently fifty-seven years old. (SSA Rec. at 123.) She completed high school and two years of college. (Id. at 127.) From January 1991 to January 1999, she worked as an administrative assistant for the Cooperative Education Director at the Suffolk County Community College. (Id. at 35–36.) Her duties entailed typing, taking phone calls, photocopying, and helping to organize dinners and parties for the students. (Id. at 36.) From January 1999 to December 2006, she worked as a senior clerk typist at the Suffolk County Sheriff's Office (the "Sheriff's Office"). (Id. at 36–37, 127.) In that role, her duties included taking phone calls, data processing, and filing papers. (Id. at 36.)

On November 18, 2003, the Plaintiff injured her left knee while working at the Sheriff's Office when she slipped on a rug and fell directly on her knee. (Id. at 174.) Dr. Richard M. Savino, an orthopedist, treated the Plaintiff's knee injury. (Id. at 165–199.) After conducting an MRI, Dr. Savino diagnosed her with a lateral meniscus tear for which he initially prescribed physical therapy, cortisone injections for pain, and a knee brace. (Id. at 175, 182, 187.) On April 19, 2004 and January 5, 2005, respectively, Dr. Savino performed two arthroscopies on her left knee. (Id. at 178, 183.)

Following the injury, she returned to work but continued to experience pain in her left knee. (See id. at 39, 195, 211.) On June 7, 2006, Dr. Savino indicated in his notes that he was planning to apply on the Plaintiff's behalf to the New York State Workers' Compensation Board (the "Workers' Compensation Board") for approval for left knee replacement surgery. (Id. at 195.)

On September 15, 2006, Dr. Stuart Kandel, an orthopedist, performed an independent medical evaluation of the Plaintiff in connection with her Workers' Compensation claim.  (Id. at 211–213.)  He diagnosed the Plaintiff with "internal derangement" and "degenerative arthritis" in her left knee, and found that a total knee replacement was appropriate.  (Id. at 213.)

On April 9, 2007, Dr. Savino performed a total knee anthroplasty — also known as knee replacement surgery — on the Plaintiff's left knee.  (Id. at 197.)  Following the surgery, the Plaintiff did not return to work at the Sheriff's Office. (See id. at 312.)

On April 20, 2007, Dr. Savino performed a follow-up exam on the Plaintiff, noting that "X-rays reveal knee replacement in good overall position. Wound is benign."  (Id. at 197.)

On May 24, 2007, Dr. David Goldman, M.D., completed a Workers' Compensation billing form in which he indicated that the Plaintiff was totally disabled and unable to perform regular duties at work.  (Id. at 28.)

On July 13, 2007, Dr. Savino gave the Plaintiff a note to return to work on July 14, 2007 so long as she avoided prolonged sitting or standing.  (Id. at 177.)  On July 27, 2007, Dr. Savino performed a second follow-up exam, during which the Plaintiff stated that her knee was "doing well" but that she was experiencing pain "from the buttock down into the foot." (Id. at 199.)  Dr. Savino gave her "no restrictions for work" and gave her the name of specialists who could address her back issues.  (Id.)

In an August 9, 2007 letter, also apparently related to the Plaintiff's workers' compensation claim, Justin Bonacci, a physical therapist who had been treating the Plaintiff since May 4, 2007, stated:

> It is my professional that [the Plaintiff] would not have any restrictions utilizing public transportation that is within community distances and participating in a day program.  It is understood that excessive walking and/or standing at this stage of

her recovery would provide some swelling and discomfort yet would not put her condition/health at risk.

(Id. at 255.)

On an October 8, 2007 Workers' Compensation billing form, Dr. Harold Avella, a physical medicine and rehabilitation specialist, stated that he examined the Plaintiff and indicated that the Plaintiff had a total disability and could not perform any work.  (Id. at 210.)

On October 24, 2007, Dr. Kandel again examined the Plaintiff and concluded that the Plaintiff had "reached maximum medical improvement" and was "not disabled at this time and is capable of returning to work as a clerk/typist."  (Id. at 216.)

On March 3, 2008, Dr. Avella performed another examination of the Plaintiff's knee and concluded that "[t]here is persistent pain, swelling, and some limitation of [the] range of motion of the left knee," and there is a "40% loss of use of the left knee."  (Id. at 209)

On June 6, 2008 Workers' Compensation Law ("WCL") Judge Leo Kornfeld found that from November 19, 2003 to July 13, 2007, the Plaintiff had a 40% loss in the use of her left leg and awarded her $45,495.94 in total benefits for that period.  (Id. at 113.)

On April 18, 2010, Dr. Randall Phillips, a radiologist, reviewed an MRI of the Plaintiff's back and concluded:

Lumbar Scoliosis. Anterior hypertrophic degenerative changes throughout the lower thoracic and lumbar spine. Multilevel chronic discogenic disease L2-3 down to L5-S1. No fracture nor bone destruction of lumbar vertebrae. Osteoarthritis of apophyseal joint L4-L5 and L5-S1.

(Id. at 261.)

On January 9, 2012, February 16, 2012, and June 20, 2012, Dr. Alexios Apazidis, an orthopedic surgeon, examined the Plaintiff and reviewed MRIs taken of her back.  (Id. at 238–39, 240–41, 267–70.)  He diagnosed the Plaintiff with back pain, "lumbar and sacral arthritis,

4

displacement of lumbar inverterbral disc without myelopathy, and radicular syndrome with lower limbs." (See id.)  He recommended that the Plaintiff adhere to a home exercise program, lose weight, and participate in physical therapy.  (See id.)

On June 25, 2012, the Plaintiff went to the Emergency Room at Brookhaven Memorial Hospital Medical Center ("Brookhaven") because she was experiencing pain in her left back. (Id. at 283.)  Dr. Joseph Artale, an osteopath, who examined the Plaintiff at Brookhaven, noted in his report that the Plaintiff's CT Scan was negative and prescribed Motrin, Morphine Sulfate, and Percocet.  (Id. a 284–85.)  She was discharged on June 25, 2012, the same day.  (Id. at 287.) The discharge summary states that the Plaintiff may return to work in 5 days and "resume regular activity when symptoms resolve and sense of well-being returns."  (Id.)

On March 28, 2013, Dr. Philippe Vaillancourt, a neurologist, examined the Plaintiff and diagnosed her with "diffuse lumbar segmental restriction." (Id. at 312–17.)  His proposed treatment plan included trigger point injections, a potential lumbar epidural, and a trial of physical therapy.  (Id. at 317.)

## B. The Procedural History

On April 16, 2012, the Plaintiff filed an application with the Social Security Administration ("SSA") for disability benefits.  (See id. at 123–24.)  In her application, she claimed that she was disabled as a result of (i) "degenerative disc disease"; (ii) "bulging discs"; and (iii) a "left knee injury."  (Id. at 126.)  She stated that her disability began on December 21, 2006 and that the last date she met the insured status requirements of the Act was December 31, 2011.  (Id. at 123.)

On July 26, 2012, the SSA denied the Plaintiff's claim.  (Id. at 54.)  On August 1, 2012, the Plaintiff filed a request for a hearing before an administrative law judge.  (Id. at 62.)

On April 15, 2013, the Plaintiff appeared with Wayne Miller, Esq., an attorney at Stanton, Guzman & Miller, LLP, for a hearing before Administrative Law Judge April M. Wexler (the "ALJ").  (Id. at 30.)

At the hearing, the Plaintiff testified as follows:

Q. Okay. So what is it that prevents you from working? Why are you disabled?

A. I have severe pains in my back.  Some days it goes through . . . down to my left side out to my toes — sciatica.  Sometimes it goes down to my right side, pelvis, but there's always a moderate to severe pain in my back.

Q. Anything else that stops you from being able to work? Okay. No?

A. No.

(Id. at 37.)

The Plaintiff described her typical day as follows:

Watch TV.  When my coffee got cold, . . . [it] was about time to get up and put my heating pad in the microwave for my back to sit down for an hour . . . . Most of my — 80% of my day was on the sofa propped up with pillows . . . . When I get too uncomfortable, I'd stand up, walk around a little bit.

(Id. at 42.)

Although she testified that she "could not stand for too long," the Plaintiff stated that she could dress herself, shower, perform "light cooking," see friends, and occasionally go food shopping with her fiancé.  (Id. at 42–44.)

The ALJ also called Rocco J. Meola ("Meola"), a vocational expert, to testify.  (Id. at 45.) In his testimony, Meola classified the Plaintiff's past work as an administrative assistant as a "sedentary" and "skilled" work activity; and he classified the Plaintiff's past work as a "senior clerk typist" as "sedentary" and "skilled."

The ALJ then posed the following hypothetical question to Meola:

Q. [. . . .] [L]et's assume a hypothetical individual the claimant's age and education and with the past jobs you've just described and this individual is limited to sedentary work in that she can occasionally lift 10 pounds; sit for approximately six hours; stand or walk for approximately two hours in an eight-hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders; ropes or scaffolds; occasionally balance and stoop; never kneel, crouch, or crawl; unlimited push and pull. Could such a hypothetical individual perform . . . any of the claimant's past work?

A. With that hypothetical, Your Honor, there'd be no restrictions on her past relevant work.

[ . . . . ]

Q. She could perform both the administrative assistant position and the senior clerk typist position?

[ . . . .]

A. Yes.

(Id. at 46–47) (alterations added).

On May 6, 2013, the ALJ rendered a decision, discussed in more detail below, finding that the Plaintiff was not disabled within the meaning of the Act between December 21, 2006, the alleged onset date of her physical impairments, and December 31, 2011, the date when she was last insured for disability benefits (the "May 6, 2013 Decision").

On October 28, 2014, the SSA Appeals Council denied the Plaintiff's request to review the May 6, 2013 Decision. (Id. at 1.)

On December 23, 2014, the Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) for review of the May 6, 2013 Decision based on her contentions that the ALJ's decision was contrary to law and not supported by the substantial evidence.

The Court will now address both contentions.

## II. DISCUSSION

### A. The Legal Standards

#### 1. The Standard of Review

 "'A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.'" Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)).

Thus, judicial review of the Commissioner's final decision requires "two levels of inquiry." Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The district court "first reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); see also Arzu v. Colvin, No. 14 CIV. 2260 (JCF), 2015 WL 1475136, at *8 (S.D.N.Y. Apr. 1, 2015) ("First, the court must decide whether the Commissioner applied the correct legal standard.") (citing Apfel, 167 F.3d at 773); see also Calvello v. Barnhart, No. 05 CIV. 4254 (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008), report and recommendation adopted, No. 05 CIV 4254 SCR MDF, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) (same).

Next, the Court examines the administrative record to "'determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision[.]'" Burgess, 537 F.3d at 128 (quoting Shaw, 221 F.3d at 131). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004)). However, the Court may not properly "affirm an administrative action on grounds

different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).

"[Substantial evidence] is still a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012). For example. "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). Moreover, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

## 2. The Five Step Regulatory Framework

To qualify for disability benefits under Title II, an individual must be (i) "insured for disability benefits;" (ii) not have attained retirement age; (iii) be a U.S. citizen or a foreign national under certain circumstances not relevant here; and (iv) have a "disability." 42 U.S.C. § 423(1).

The Act defines "disability" to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA regulations set forth a five-step sequential evaluation process for determining whether a claimant's impairment meets the definition of "disability." See 20 C.F.R. § 404.1520. The Second Circuit has implemented that procedure as follows:

> (i) "[T]he [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity";
> (ii) "If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities";
> (iii) "If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations";
> (iv) "If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work"; and
> (v) "Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (alterations in original) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)).

"The claimant generally bears the burden of proving that she is disabled under the statute, but 'if the claimant shows that [her] impairment renders [her] unable to perform [her] past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999) (alteration in original) (quoting Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983)); see also Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 445 (2d Cir. 2012)).

### 3. The May 6, 2013 Decision

In finding that the Plaintiff was not disabled within the meaning of the Act, the ALJ applied the correct five step framework discussed above.

Specifically, at step 1, the ALJ determined that the Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 21, 2006 through her date last insured of December 31, 2011." (SSA Rec. at 14.)

At step 2, the ALJ found that the Plaintiff had the following "severe impairments": "scoliosis, degenerative disc disease, [] osteoarthritis of the lumbar spine and osteoarthritis of the left knee status post-surgery." (Id.).

At step 3, the ALJ found that the Plaintiff's impairments did not "meet[]" or "medically equal" the listed impairments in Appendix 1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, which constitute *per se* disabling conditions. (Id.)

At step 4, after careful consideration of the record, including the Plaintiff's own testimony and the Plaintiff's medical records, the ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform the following work:

> Sedentary work as defined in 20 CFR 404.1567(a) such that she could occasionally lift 10 pounds, sit for approximately 6 hours during a regular 8 hour workday, stand/walk for approximately two hours during a regular 8 hour workday with normal breaks, occasionally climb ramps or stairs, occasionally balance and stoop, and push or pull without limitation but could not kneel, crouch, crawl, or climb ladders/scaffolds.

(Id. at 14–15.)

Based on this RFC assessment, and relying on the testimony of the vocational expert, the ALJ concluded that the Plaintiff "was capable of performing past relevant work as an administrative assistant and senior clerk typist." (Id.)

Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Act for the period December 21, 2006 to December 31, 2011.

**B. The Plaintiff's Claims**

The Plaintiff focuses her appeal on the fourth and fifth steps of the ALJ's analysis. She asserts that the ALJ's finding that the Plaintiff had the RFC to perform her past sedentary work as an administrative assistant and senior clerk typist was in error because (i) the ALJ did not consider the proper factors or assign weight to the opinions of Dr. Savino and Dr. Avella, two of the Plaintiff's treating physicians; (ii) the ALJ's RFC analysis was not supported by substantial evidence in the record; and (iii) the ALJ failed to properly assess the Plaintiff's credibility with regard to her back pain. (The Pl.'s Mem. of Law at 9–14.)

In response, the Commissioner asserts that (i) the ALJ correctly considered the opinions of Dr. Savino and Dr. Avella; (ii) the ALJ's RFC analysis was supported by the substantial evidence; and (iii) the ALJ properly considered and disregarded portions of the Plaintiff's subjective complaints regarding the pain in her back. (The Commn'r's Reply Mem. of Law at 2–5.)

**C. As to the Opinions of the Plaintiff's Treating Physicians**

In concluding that the Plaintiff had the RFC to perform her past work as an administrative assistant and senior clerk typist, the ALJ relied, in part, on the medical records of the Plaintiff's treating physicians. (See SSA Rec. at 14–19.) Specifically, with regard to the Plaintiff's knee condition, the ALJ noted that although the medical reports of Dr. Savino, one of her treating orthopedists, indicated that the Plaintiff had a "long history of treatment for knee pain following an injury," those reports also indicated that following knee surgery, her condition improved to the point where she could return to work. (Id. at 15.)

The ALJ also considered a March 3, 2008 report by Dr. Avella, who examined the Plaintiff several times in connection with the Plaintiff's Workers' Compensation claim. (Id. at

16.)  The ALJ correctly noted that Dr. Avella had opined that "[a]ccording to the State of New York Worker's Compensation Board medical guidelines, there is a 40% loss of use of the [Plaintiff's] left knee."  (Id. at 16.)  However, the ALJ concluded that Dr. Avella's opinion was not inconsistent with her finding that the Plaintiff had the RFC to perform "sedentary work" because:

> Dr. Avella[] did not assess the [Plaintiff] with any particular work restrictions nor provide a function by function analysis of the [Plaintiff's] physical limitations. Although he noted that the [Plaintiff] continued to have symptoms and positive clinical findings, I do not find anything in his reports to be inconsistent with a finding that the [Plaintiff] retained the ability to stand/walk for a total of 2 hours during a regular 8 hour workday, attenuated by normal work breaks, or her ability to perform any of the tasks associated with sedentary exertional work . . . . Therefore, with respect to the claimant's knee impairment, I find that the record as a whole is consistent with at least the residual functional capacity described above prior to her date last insured.

(Id. at 16–17.)  Ultimately, the ALJ gave "significant weight to the medical and nonmedical opinions," including the opinions of Dr. Avella and Dr. Savino.  (Id. at 19.)

The Plaintiff asserts that the ALJ's analysis of Dr. Savino and Dr. Avella's medical opinions was flawed because (i) the ALJ failed to consider the factors set forth in the applicable SSA regulations in determining what weight to give those opinions; (ii) the ALJ should have "subpoenaed the necessary supplemental information" and the doctors themselves to fill in the gaps identified in their opinions.  (See the Pl.'s Mem. of Law at 9–11.)

In response, the Commissioner contends that (i) the opinion of Dr. Savino and Dr. Avella "largely supported the ALJ's decision," and to the extent those opinions assessed the Plaintiff as having additional postural limitations, those assessments were properly "incorporated into the ALJ's very detailed RFC finding"; and (ii) as the ALJ had sufficient evidence to render a disability determination, there was no need to re-call Dr. Savino or Dr. Avella to testify.  (See the Commn'r's Reply Mem. of Law at 2–5.)  The Court agrees.

As to the Plaintiff's first contention, under the so-called treating physician rule, "[t]he opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (Per Curiam) (citing Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)); see also 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

However, where an ALJ "do[es] not give the treating source's opinion controlling weight," the ALJ must consider the following factors in determining the appropriate amount of weight to give the opinion: (i) the "[l]ength of the treatment relationship and the frequency of examination"; (ii) the "[n]ature and extent of the treatment relationship"; (iii) the "relevant evidence [that the treating source] provides to support an opinion"; (iv) the consistency of the medical opinion with the record as a whole; and (v) whether the opinion is from a specialist about medical issues related to his or her area of specialty. Id. at § 404.1527(c)(2)–(6); see also Selian, 708 F.3d at 418 ("In order to override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.").

Here, the ALJ *did* give the opinions of Dr. Savino and Dr. Avella "significant weight" because she found that those opinions were consistent with the ALJ's finding that the Plaintiff "retained the ability to stand/walk for a total of 2 hours during a regular 8 hour work day,

attenuated by normal work breaks." (Id. at 17.)  There is substantial evidence supporting her

conclusion.  As the ALJ correctly noted, Dr. Savino's treatment notes from a July 27, 2007 exam

indicate that the Plaintiff had fully recovered from her knee surgery and "has no restrictions for

work." (Id. at 199.)  Dr. Avella did opine that the Plaintiff had "persistent, pain, swelling, and

some limitation of range of motion of the left knee" and a 40% loss in the use of her left knee.

(Id. at 209.)  However, as the ALJ correctly noted, this opinion did not speak to the Plaintiff's

ability to perform the core functions required for sedentary work — namely, sitting for six hours

per day and standing or walking for approximately two hours per day.  (See id. at 14, 17.)

Thus, there was no need for the ALJ to consider the factors set forth in the SSA

regulations because she did not disregard the opinions of Dr. Savino and Dr. Avella in making

her RFC determination.  Rather, she gave the opinions "significant weight" and explained why

she found the opinions to be consistent with the record as a whole.  No more is required.  See

Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (Summary Order) ("Atwater challenges

the ALJ's failure to review explicitly each factor provided in 20 C.F.R. § 404.1527(c). We

require no such slavish recitation of each and every factor where the ALJ's reasoning and

adherence to the regulation are clear.").

The cases cited by the Plaintiff are not to the contrary.  In those cases the ALJ did *not*

give controlling weight to the opinions of treating physicians and failed to explain the reasoning

for reaching such a conclusion.  See Baybrook v. Chater, 940 F. Supp. 668, 674 (D. Vt. 1996)

("Although the ALJ did determine that the treating physician's opinion was non-controlling, he

failed to mention what weight he gave the opinion other than 'extra' weight required by the old

rule. Further, he failed to apply the six factors used to judge what weight was to give to Dr.

Zelazo's opinion."); Thorington v. Shalala, 880 F. Supp. 995, 1002-03 (W.D.N.Y. 1994)

(remanding a social security appeal because the ALJ failed to consider the fact that "[a]lmost all of the medical evidence in the record" suggested that the plaintiff could not perform "sedentary work.").

By contrast, in this case, the ALJ *did* consider the medical opinions of Dr. Savino and Dr. Avella and concluded that they were consistent with the other medical records which suggested that the Plaintiff's knee condition did not preclude her from performing sedentary work. Accordingly, the cases cited by the Plaintiff are distinguishable and failure to recite each factor provided in 20 C.F.R. § 404.1527(c) is not legal error, as she appears to contend.

Second, the Court is not persuaded by the Plaintiff's contention that the ALJ should have "subpoenaed the necessary supplemental information" and called Dr. Savino and Dr. Avella to testify at the April 15, 2013 hearing. (See the Pl.'s Mem. of Law at 9–11.)

The SSA regulations provide that "[i]f the evidence in your case record is insufficient or inconsistent, we may need to take additional actions." 20 C.F.R. § 404.1520b (emphasis added). Among the options, the SSA regulations provide that the ALJ "may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence." Id. at § 404.1520b(c) (emphasis added).

Thus, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)); see also Flagg v. Astrue, No. 5:11-CV-00458 (LEK), 2012 WL 3886202, at *5 (N.D.N.Y. Sept. 6, 2012) ("The Court finds Plaintiff's argument unavailing because the record contains substantial evidence from both

treating and consultative sources indicating that her cognitive and mental abilities were not significantly impaired. This is not a case in which a crucial issue of mental capacity is unexplored or left undeveloped.").

Here, the Plaintiff does not identify any gaps in the administrative record or vague statements in the opinions of the Plaintiff's treating physicians which necessitated calling them to testify at the hearing. To the contrary, and as discussed in more detail below, the records from the Plaintiff's treating physicians and the medical tests done of the Plaintiff's knee and back provided ample basis for the ALJ to conclude that the Plaintiff was not disabled within the meaning of the Act. Accordingly, contrary to the Plaintiff's contention, the ALJ was under no obligation to seek additional information from the Plaintiff's treating physicians.

For these reasons, the Court finds that the ALJ properly applied the treating physician rule and complied with her duty to adequately develop the administrative record.

**D. As to the Plaintiff's Residual Functional Capacity**

As noted, the ALJ determined that for the period December 21, 2006 to December 31, 2011, the Plaintiff maintained the RFC to perform "sedentary work" as defined by the SSA regulations with certain additional limitations. (SSA Rec. at 14.) The Court will now address the propriety of the ALJ's RFC determination in light of the Plaintiff's knee and back impairments.

**1. As to the Plaintiff's Knee Impairment**

The ALJ determined that osteoarthritis in the Plaintiff's left knee did not prevent her from performing sedentary work based on (i) the undisputed fact that the Plaintiff went back to work as a senior clerk typist after she first injured her knee on November 18, 2003; and (ii) the medical records of Dr. Savino, her treating physician, and Bonacci, her treating physical

therapist, indicated that the Plaintiff's April 9, 2007 knee replacement surgery was successful and enabled her to return to work. (See id. at 15–17.)

The Plaintiff challenges the ALJ's determination as unsupported by the substantial evidence because according to her, the ALJ "relied on . . . distorted interpretations of the reports offered by Dr. Savino and of [the] Plaintiff's testimony as to her physical capabilities." (The Pl.'s Mem. of Law at 12.) The Plaintiff does not affirmatively point to any specific evidence that the ALJ failed to consider, nor does she explain why she believes the ALJ misread the evidence. (See id.)

The Court finds that the Plaintiff's vague objections to the ALJ's RFC analysis are unsupported and without merit. The Plaintiff does not dispute, and the record evidence is clear, that the Plaintiff returned to her job as a senior clerk typist immediately following her November 18, 2003 injury until she left work in December 2006. (See SSA Rec. at 211.) Thus, she could not have been disabled, nor does she claim that she was disabled during this period.

On April 9, 2007, the Plaintiff underwent total knee replacement surgery, and as the ALJ correctly found, the medical records indicate that the surgery was successful and that she could have returned to work following the surgery but chose not to do so. This record is clear that both Dr. Savino and Bonacci stated that the Plaintiff successfully recovered from her April 9, 2007 knee surgery and could return to work either with no restrictions whatsoever, or could return to work so long as she avoided excessive standing or walking. (See id. at 177, 199, 255.) Similarly, Dr. Kandel, who examined the Plaintiff in 2005, 2006, and 2007 in connection with the Plaintiff's Workers' Compensation claim, stated in an October 24, 2007 post-surgery evaluation of the Plaintiff's knee:

> This claimant has received approximately 6 months of post operative physical therapy and there is no indication for any further causally related physical therapy for the left knee.  She should be considered to have reached maximum medical improvement.  The claimant is not disabled at this time and is capable of returning to work as a clerk/typist.

(Id. at 216.)

Similarly, at the April 15, 2013 hearing, when asked why she was disabled, the Plaintiff apparently focused entirely on the pain in her back and did not mention or refer to any impairments in her knee.  (See id. at 37.)  Thus, her own testimony suggests the lack of any disabling knee impairment.

At most, these medical records indicate that the Plaintiff's only restriction due to her knee surgery was to avoid excessive standing or walking, restrictions which the ALJ explicitly incorporated into her RFC by limiting the Plaintiff to "sedentary work" that involved standing/walking for only two hours a day with normal breaks and occasionally climbing ramps or stairs.  (See id. at 14.)

There was some indication in the record that the Plaintiff's knee injury caused her to be at least partially disabled under New York State Workers' Compensation law for portions of the relevant period here.  For example, on May 24, 2007, Dr. Goldman completed a Workers' Compensation billing form in which he indicated that the Plaintiff was totally disabled and unable to perform regular duties at work.  (Id. at 28.)  Similarly, on March 3, 2008, Dr. Avella performed an exam related to the Plaintiff's Workers' Compensation claim and concluded that the Plaintiff's injury resulted in a "40% loss of use of the left knee."  (Id. at 209)  On June 6, 2008, WCL Judge Kornfeld found that from November 19, 2003 to July 13, 2007, the Plaintiff had a 40% loss of use of her left leg and was therefore, entitled to retroactive disability benefits in the amount of $45,495.94.  (Id. at 113.)

The SSA regulations provide that "a decision by . . . any other governmental agency," such as the Workers' Compensation Board, "about whether [a claimant] is disabled . . . is based on its rules and is not our decision about whether you are disabled or blind."  20 C.F.R. § 404.1504.  Interpreting this regulation, the Second Circuit has held that "[w]hile the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered." Hankerson v. Harris, 636 F.2d 893, 896-97 (2d Cir. 1980) (alteration in original) (quoting Cutler v. Weinberger, 516 F.2d 1282, 1286 (2d Cir. 1975)); accord Claymore v. Astrue, 519 F. App'x 36, 38 (2d Cir. 2013).

Here, as noted above, the ALJ did consider the March 3, 2008 opinion of Dr. Avella that according to the "State of New York Workers' Compensation medical guidelines, there 40% loss use of the [Plaintiff's] left knee."   (See id. at 16–17.)  However, she concluded that Dr. Avella's opinion was not "inconsistent with a finding that the [Plaintiff] retained the ability" to perform "sedentary work" because Dr. Avella "did not assess the [the Plaintiff] with any particular work restriction nor provide a function by function analysis of the [Plaintiff's] physical limitations." (Id.)  From the record, the Court does not discern any reason why this conclusion was in error. Nor has the Plaintiff identified any such reason.

The ALJ did not explicitly consider the decision rendered by WCL Judge Kornfeld or the May 24, 2007, Workers' Compensation billing form in which Dr. Goldman stated that the Plaintiff was totally disabled.  (Id. at 28.)

However, as with Dr. Avella's opinion, there is no indication in either of these documents which suggests that the Plaintiff could not perform the functions required for her previous work as senior clerk typist or administrative typist, both of which entail minimal exertion.  Indeed,

there is no analysis whatsoever in the May 24, 2007 billing.  Dr. Goldman merely checked a box indicating that the Plaintiff was totally disabled.  Thus, neither of these medical opinions is probative of the question at issue in this case — namely, whether under the SSA regulations the Plaintiff's knee injury rendered her disabled for the period December 21, 2006 to December 31, 2011.  Further, as stated above, the medical opinions of her treating physicians discussed above clearly suggest that the Plaintiff was perfectly capable of returning to work following her knee replacement surgery.

Accordingly, the Court finds no error in the ALJ's treatment of the opinions related to the Plaintiff's WCL claim.  See Claymore, 519 F. App'x at 38 ("Nonetheless, we find no error where, although not specifically mentioned, the VA determination was clearly considered by the ALJ, who thoroughly discussed the other VA records in its findings."); Simmons v. Colvin, No. 13 CIV. 1724 KBF, 2014 WL 104811, at *7 (S.D.N.Y. Jan. 8, 2014) ("Even if the report completed by Dr. Wilson on September 12 did partially relate to the disability period in question, it is not material. Plaintiff claims that the form 'directly contradicts the RFC found by the ALJ.' (See PL's Mot. 11.) However, Dr. Wilson completed that form for a workers' compensation claim. '[T]he standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act,' and 'an opinion rendered for purposes of workers' compensation is not binding on the [Commissioner].'") (quoting Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y.1994)).

For these reasons, the Court finds that the ALJ's determination that the Plaintiff's knee injury did not prohibit her from performing her prior work to be supported by the substantial evidence.

### 2. The Plaintiff's Back Conditions

To be eligible for disability insurance benefits under the Act, a plaintiff must be "insured for disability insurance benefits." 42 U.S.C. § 423(a)(1)(A). "This occurs if the plaintiff meets the earnings requirements, with a specific number of quarters of coverage depending on the applicant's age, or qualifies for a period of disability." Serrano v. Astrue, No. 05-CV-1356 (SLT), 2008 WL 2622927, at *4 (E.D.N.Y. July 1, 2008); see also 42 U.S.C. §§ 423(c)(1)(B) , 416(i)(2)(A); 20 C.F.R. §§ 404.101(a), 404.130-404.133, 404.320. Importantly, "[a]n individual must demonstrate the onset of disability on or before his date last insured . . . in order to qualify for Social Security disability insurance benefits." Id.; see also Oatman v. Comm'r of Soc. Sec., No. 5:05-CV-731, 2008 WL 413296, at *3 (N.D.N.Y. Feb. 13, 2008) ("A period of disability must commence before the date that the applicant's insured status lapses.") (citing 20 C.F.R. § 404.320)).

In this case, the ALJ found — and the Plaintiff does not appear to dispute — that the date the Plaintiff last met the "insured" requirement under the Act was December 31, 2011. (See SSA Rec. 33.) Accordingly, to obtain disability benefits under the Act, she must show that she had a disability at some point from December 21, 2006, the date when she alleged her disability began, to December 31, 2011, the date she last met the Act's insured requirement.

With regard to her back conditions — namely, scoliosis, degenerative disc disease, and osteoarthritis of the lumbar spine —, the ALJ determined that although there was some evidence in the record to support her claims of a severe back impairment, those records were all dated *after* December 31, 2011. (SSA Rec. at 17) Thus, according to the ALJ, these records did not provide evidence that the Plaintiff suffered a disability from December 21, 2006 to December 31, 2011, during the relevant period in this case. (See id.) Since there were no medical opinions

dated within this period regarding the Plaintiff's functional limitations, the ALJ concluded that there was "certainly nothing to support a finding that the claimant's back pain prevented her from performing the range of sedentary work." (Id.)

The Plaintiff contends that substantial evidence does not support the ALJ's determination because "[t]he evidence regarding the Plaintiff's back dates back to 2010, prior to her date last insured and continued thereafter. Her findings in 2012 and 2013 most definitely stem from a time after her date of onset and prior to her date last insured." (The Pl.'s Mem. of Law at 12.)

However, the Plaintiff points to no specific medical evidence to substantiate either of her assertions. To the contrary, the Court finds that substantial evidence supports the ALJ's conclusion that prior to December 31, 2011, there are no medical opinions regarding the Plaintiff's functional limitations due to her back injuries.

In reviewing medical records, an ALJ "is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citing Rutherford v. Schweiker, 685 F.2d 60, 63 (2d Cir. 1982)). Thus, courts have held that "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'" Waldau v. Astrue, No. 5:11-CV-925 GLS, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2012) (quoting Walker v. Astrue, No. 08–CV–0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010)); see also Rutherford, 685 F.2d at 63 ("The report contained no objective findings to explain the headaches or to justify a claim of disability resulting from them. Other hospital reports in the record give no greater support to plaintiff's claim of disabling pain. The ALJ was entitled to rely on these negative reports, on the equally negative reports of the

doctors, and on his own evaluation of plaintiff's and his sister's credibility in determining whether plaintiff suffered such serious pain as to be disabled.").

Here, the only medical opinion that is dated within the relevant period is an April 18, 2010 report by Dr. Phillips, a radiologist, of an MRI taken of the Plaintiff's back, which states:

> Lumbar Scoliosis. Anterior hypertrophic degenerative changes throughout the lower thoracic and lumbar spine. Multilevel chronic discogenic disease L2-3 down to L5-S1. No fracture nor bone destruction of lumbar vertebrae. Osteoarthritis of apophyseal joint L4-L5 and L5-S1.

(SSA Rec. at 261.) Nothing in this report indicates that the "degenerative changes" in the Plaintiff's lumbar spine prevented her from performing sedentary work.

Furthermore, as the ALJ correctly noted, the Plaintiff failed to seek follow-up treatment until January 2012. (Id. at 17.) Some district courts have held that "a claimant cannot be denied social security benefits for failing to obtain medical treatment that would ameliorate her condition if she cannot afford that treatment." Fuller v. Astrue, No. 09-CV-6559, 2010 WL 3516935, at *7 (W.D.N.Y. Sept. 7, 2010); see also Norton v. Colvin, No. 14-CV-646S, 2016 WL 787965, at *6 (W.D.N.Y. Mar. 1, 2016) ("The ALJ notes that he did not find Plaintiff's testimony as to significant physical limitations credible due to Plaintiff's failure to seek treatment between December 2008 and March 2011. (R. 21). Again, although this provides some evidence of Plaintiff's symptoms (or lack thereof), it is not substantial evidence that Plaintiff had the RFC 'to perform the full range of light work' as of December 23, 2008.").

However, when viewed in light of the lack of any other medical evidence within the relevant disability period corroborating the Plaintiff's complaints, the fact that the Plaintiff waited nearly a year and a half to seek follow-up treatment for her back pain does, at the very least, suggest that the Plaintiff did not suffer from a totally disabling impairment. See Banks v. Astrue, 955 F. Supp. 2d 178, 190 (W.D.N.Y. 2013) (affirming an ALJ's decision to discredit a

plaintiff's credibility, in part, because "the [p]laintiff's failure to seek followup treatment for alleged physical ailments contradicted his claims of total disability and severe symptoms."); Waldau v. Astrue, No. 5:11-CV-925 (GLS), 2012 WL 6681262, at *2 (N.D.N.Y. Dec. 21, 2012) ("Further, while the ALJ''s step two determination does not mention progressive nuclear sclerosis of the left eye, he explained that he did not find Waldau's other alleged impairments, including bilateral eye pain, to be severe as they did not limit his ability to perform basic work activities, evidenced by the fact that Waldau failed to seek treatment for such impairments subsequent to his alleged onset date.") (emphasis added).

In addition, the Plaintiff's medical records dated after December 31, 2011 do not establish that the Plaintiff suffered from a continuous disability which began during the relevant period of this case. The medical reports of Dr. Alexios Apazidis, an orthopedic surgeon who examined the Plaintiff on January 9, 2012, February 16, 2012, and June 20, 2012, do not state that the Plaintiff had any functional limitations which would preclude her from performing sedentary work, nor do they identify any chronic or impairments that the Plaintiff had been suffering from for a prolonged period. (See SSA Rec. at 238–39, 240–41, 267–70.) Similarly, although the Plaintiff visited the emergency room at Brookhaven on June 25, 2012, Dr. Artale diagnosed her with unspecified back pain, noted that CT scans taken of her back were negative, and stated that she could return to work within five days. (See id. at 285, 292.) Finally, on March 28, 2013, Dr. Vaillancourt, a neurologist, performed an exam on the Plaintiff and diagnosed her with "diffuse lumbar segmental restriction" but did not refer to any functional limitations, let alone functional limitations that began prior to December 31, 2011, the last date when she met the disability insurance requirement. (Id. at 312–17.)

Based on the lack of any medical opinions before or after the relevant disability period that suggest that the Plaintiff could not sit for prolonged periods and perform the light exertional tasks associated with sedentary work, the Court finds that substantial evidence supports the ALJ's determination that the Plaintiff's back condition did not render her totally disabled.

## E. The Plaintiff's Credibility

The Plaintiff also asserts that this case should be remanded because in making her RFC determination, the ALJ failed to take into account "[the Plaintiff's] excruciating complaints regarding her back."  (The Pl.'s Mem. of Law at 12.)  Again, the Court disagrees.

The Court finds that the ALJ *did* consider the Plaintiff's testimony that she "has had back pain for 10 years, which has been so severe that she has had to spend up to 80% of the day lying down."  (Id. at 18.)  However, she also found that the Plaintiff's testimony was "simply not reconcilable with her failure to seek medical attention until 2012 and her acknowledged treatment modalities of over the counter pain medication, ice, and heat pads to the date last insured."  (Id. at 18.)  Accordingly, she determined that the Plaintiff's statements were credible "only to the extent that they are consistent with the residual functional capacity [to perform sedentary work]."  (Id.)

In the Court's view, there was nothing legally improper about the ALJ's determination. It is well-established that "[w]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account,  . . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  Genier, 606 F.3d at 49 (citing 20 C.F.R. § 416.929) (emphasis added).

In that regard, SSA regulations provide a two-step process for evaluating the credibility of a claimant's assertions of pain. "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."' Id. (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (alteration in original) (quoting 20 C.F.R. § 404.1529(a)); see also SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) ("[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.").

"In evaluating the intensity and persistence of [the claimant's] symptoms, [the ALJ] consider[s] all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant], [the claimant's] treating or nontreating source, or other persons about how your symptoms affect [the claimant]." 20 C.F.R. § 404.1529(c). Relevant factors, include:

> (i) the claimant's "daily activities"; (ii) "[t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms"; (iii) "[p]recipitating and aggravating factors"; (iv) "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms"; (v) "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms"; (vi) "[a]ny measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)"; and (vii) "[o]ther factors concerning your functional limitations and restrictions due to pain or other symptoms."

Id. at § 404.1529(c)(3).

Although the ALJ did not precisely follow this two-step process in assessing the weight of the Plaintiff's testimony, the Court finds that the ALJ was well within her discretion in disregarding portions of the Plaintiff's testimony.  Further, the Court finds that her determination was supported by the substantial evidence because, as noted above, there is no objective medical record evidence which corroborates the Plaintiff's claims that she is unable to perform her past sedentary work as an administrative assistant and a senior clerk typist.  See Donnelly v. Colvin, No. 13-CV-7244 (AJN) (RLE), 2015 WL 1499227, at *15 (S.D.N.Y. Mar. 31, 2015) ("The ALJ properly evaluated Donnelly's credibility. She relied on objective, medical records and found that some of Donnelly's statements were contradicted by the medical records. (Tr. at 17.) She then inferred those comments were not credible . . . . It is within the discretion of the ALJ to evaluate the credibility of claimant's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the symptoms alleged."); Shorter v. Comm'r of Soc. Sec., No. 5:12-CV-1502 NAM/ATB, 2014 WL 1280459, at *11 (N.D.N.Y. Mar. 27, 2014) ("The court finds that the ALJ correctly applied the proper legal standards in assessing plaintiff's credibility and adequately specified the reasons for discrediting plaintiff's statements. His credibility determination is supported by substantial evidence.").

In sum, the Court finds that the ALJ's determination that the Plaintiff had the residual functional capacity to perform her past work as an administrative assistant and a senior clerk typist was supported by substantial evidence.  Accordingly, the Court affirms the decision by the ALJ finding that the Plaintiff was not disabled within the meaning of the Act for the period December 21, 2006 to December 31, 2011.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Commissioner's motion for a judgment on the pleadings; denies the Plaintiff's motion for a judgment on the pleadings; affirms the May 6, 2013 Decision by the ALJ; and directs the Clerk of the Court to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
April 20, 2016

  */s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge